<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RUSSELL TINSLEY, *Petitioner*, v. WARDEN, et al., *Respondents*. | Civil Action No. 24-cv-09673 **OPINION** December 30, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on the Petition for a Writ of Habeas Corpus of Petitioner Russel Tinsley ("Petitioner"), a civilly committed sex offender under New Jersey's Sexually Violent Predator Act ("SVPA"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner challenges his continued confinement by raising multiple grounds, including alleged bias in treatment reports, constitutional claims under the First, Eighth, and Fourteenth Amendments, and the purported inadequacy of his treatment toward release. (*Id.*) For the reasons set forth below, the Court will deny the habeas petition, and no certificate of appealability will issue.

**I.     FACTUAL BACKGROUND AND PROCURAL HISTORY**

Petitioner is a resident of the Special Treatment Unit ("STU"), the secure custodial facility which is designated for the treatment of persons in need of commitment under the SVPA, N.J.S.A. 30:4-27.24 to -27.38. (Petition, ECF No. 1 at 1.) In 2023, Petitioner appealed from the February 9, 2022 judgement to continue his commitment. *Matter of Commitment of R.T.*, No. A-1887-21, 2023 WL 8016717 (N.J. Super. Ct. App. Div. Nov. 20, 2023), *cert. denied*, 258 N.J. 437, 320 A.3d 1119

(2024). The Court adopts the facts set forth by the New Jersey State Superior Court, Appellate Division ("Appellate Division"):

> We need not recount in substantial detail R.T.'s extensive criminal history, which we set forth in our opinion affirming the January 15, 2014 initial judgment of commitment. *In re Civ. Commitment of R.T.*, No. A-2521-13 (App. Div. Feb. 19, 2016) (slip op. at 1-5). In summary, R.T.'s criminal history includes several out-of-state arrests and convictions for sexually related offenses, commencing at age sixteen with a rape charge and subsequent adjudication in Pennsylvania. *Id.* at 2. As an adult R.T. was convicted of sexually related offenses in California in 1984 and 1999, and Pennsylvania in 2005. *Id.* at 2, 5. R.T. was also convicted and charged with multiple non-sexual offenses in California, Pennsylvania, and Nevada, including failure to register as a sex offender, vehicular manslaughter, assault, fraud, drug, and weapons offenses. *Id.* at 2.
>
> Eventually R.T. was extradited to New Jersey on a 1997 warrant for non-sexually related offenses. *Id.* at 5. After R.T. pled guilty to third-degree theft, he was sentenced to a four-year prison term. *Ibid.* On May 3, 2010, the State filed a petition for civil commitment under the SVPA. *Ibid.* R.T. thereafter challenged the trial court's jurisdiction, contending "he had never been charged with or convicted of any sexual offense in New Jersey." *Id.* at 6. Following protracted litigation concerning jurisdiction and other issues, the trial court held a hearing and thereafter entered the initial January 15, 2014 judgment, committing R.T. to the STU.[1] *Id.* at 9-10.
>
> After we affirmed R.T.'s initial commitment, his residency at the STU was marked by years of litigation concerning his placement. *See e.g.*, *In re Civ. Commitment of R.T.*, No. A-4263-18 (App. Div. Mar. 27, 2020) (slip op. at 3) (affirming the trial court's denial of R.T.'s motion to change his treatment refusal status in the STU.)[2] In

---

[1] As stated in [the] decision affirming R.T.'s initial commitment, "[t]he SVPA 'applies whether the offense was committed in New Jersey ... or another State.' " R.T., slip op. at 13 (second alteration in original) (quoting *In re Civ. Commitment of P.Z.H.*, 377 N.J. Super. 458, 463-64, 873 A.2d 595 (App. Div. 2005)). *See also* N.J.S.A. 30:4-27.26.

[2] R.T. also filed a civil rights complaint in federal court against certain STU staff, a public defender, and a deputy attorney general asserting, among other claims, that several psychologists "retaliated against him for filing the grievances by prolonging his treatment." *[R.T.] v. Main*, No. 20-2846, 2021 WL 2853152 at*——, 2021 U.S. App. LEXIS 20273 at *2 (3d Cir. July 8, 2021) (summarily affirming the dismissal of most claims and judgment for defendants on the remaining claims).

our decision, we noted "R.T. sought various relief in the Law Division, but he did not challenge his continued commitment." *Id.* at 3.

Ultimately, the present review hearing was conducted by Judge Bradford M. Bury over the course of seven non-consecutive days between September 15, 2021, and January 25, 2022. The State presented the expert testimony of psychiatrist Dr. Nicole Dorio, D.O., and psychologist Dr. Paul Dudek, Ph.D., a member of the STU's Treatment Progress Review Committee (TPRC). R.T. represented himself at the hearing with the assistance of standby counsel. R.T. did not testify but called his own expert in psychology, Dr. Ronald Silikovitz, Ph.D., and the STU's medical director, Dr. Sandra Connolly, who testified as a fact witness. The judge also considered the "plethora of documents admitted into evidence" by both parties, including the experts' reports, the STU's treatment records, and R.T.'s self-published book.

Immediately following the parties' closing statements, Judge Bury issued a preliminary decision from the bench, announcing his intention to continue R.T.'s commitment at the STU with "a short review period." Shortly thereafter, the judge issued a comprehensive oral decision squarely addressing the evidence adduced at the hearing in view of the governing law. Citing the testimony of each witness seriatim, the judge made detailed credibility and factual findings.

Pertinent to the issues raised on appeal, the judge noted Dr. Dorio had interviewed R.T. four times prior to the hearing and testified about his lengthy criminal history. But the judge was not fully persuaded by Dr. Dorio's opinion that because R.T. had been placed on treatment refusal status multiple times and failed to engage adequately with his treatment to enable him to progress, R.T. "[wa]s essentially an untreated sex offender." Judge Bury explained:

> I found [Dr. Dorio] to be a credible witness with regard to the ultimate conclusion of whether or not [R.T.] is presently highly likely to sexually reoffend, that her factual foundation in support of the same is clearly present in the record, and also her opinion that he's not highly likely to comply with terms and conditions of a conditional discharge plan now…
>
> I did not find [Dr. Dorio] credible in certain areas with regard to giving [R.T.] his due, and his appropriate credit… and complimenting him, so-to-

> speak, with regard to his significant areas of progress, although he still has a ways to go.

Turning to Dr. Dudek's testimony, the judge noted the doctor diagnosed R.T. with "antisocial personality disorder with narcissistic features… other specified paraphilic disorder non-consent, and sexual sadism disorder." Crediting Dr. Dudek's testimony, the judge was persuaded by his "ultimate conclusions… that [R.T.] is presently highly likely to sexually reoffend if he were to be discharged into [the] community, and that he is not highly likely to comply with his terms and conditions of treatment."

Conversely, Judge Bury wholly discredited Dr. Silikovitz's testimony, highlighting R.T.'s religious commitment is not a relevant factor regarding a sexual predator's likelihood to reoffend. The judge stated: "I find Dr. Silikovitz's opinion has to be rejected wholesale because he doesn't address… the core requirement[] under the statute" of whether the individual has mental abnormality or personality disorders.

Finally, the judge noted R.T. called Dr. Connolly "to testify about his medical chart and his colorectal cancer treatments" to demonstrate "he is unable to obtain an erection as a result of the surgical procedure that occurred." Although the judge found Dr. Connolly's testimony credible, he concluded "her testimony and the medical records do not support by a clear and convincing evidence standard that [R.T.], in fact, is not able to obtain an erection." Instead, the judge noted as R.T. continues treatment, the STU's diagnostic testing – including an "arousal polygraph" – will determine whether he "is able to become aroused."

Concluding R.T.'s commitment should continue, Judge Bury found "clear and convincing evidence that [R.T.] suffers from a mental abnormality or personality disorder that affects him emotionally, cognitively, or volitionally to such a degree that he is predisposed to commit acts of sexual violence." Further, "[i]f released, [R.T.] would have serious difficulty controlling his sexually violent behavior to such a degree that he will be highly likely within the reasonably foreseeable future to engage in acts of sexual violence."

In reaching his decision, the judge considered the possibility of a conditional discharge with conditions "to reduce [R.T.]'s dangerousness below the level of committability." However, the judge found neither R.T. nor any of the experts presented any realistic conditions during the hearing. Nonetheless, the judge recognized R.T. was "promoted to Phase 2" after he was removed

> from treatment refusal status. In view of R.T.'s progress, the judge "order[ed] that by the next expedited review hearing date, so long as he continues to… meaningfully engage in treatment, he shall move to Phase 3A." The judge elaborated:
>
>> [R.T.] offended repeatedly, both as a juvenile and then as an adult, even after having been sanctioned. So, the propensity for him to reoffend is high.
>>
>> And hopefully, as he continues to progress throughout his treatment, he's going to be able to bring that down to below the standard of highly likely, and become less than highly likely.
>>
>> But at the moment, there's really no rational basis or means upon which the court at this juncture could fashion a discharge plan with sufficient conditions in order to ensure the safety of the community and to prevent [R.T.] from reoffending.
>>
>> But the court is confident if… [R.T.], continues on his positive upward trajectory with regard to his treatment, he will be able to succeed one day and to be discharged safely into the community where he will not be at risk…
>
> The judge issued a memorializing order continuing R.T.'s commitment and scheduling the next review hearing on September 7, 2022. This appeal followed.[3]

*Id.* at *1–3. (Alterations added.) The Appellate Division affirmed, (Petition, ECF No. 1 at 11–12.) and the New Jersey Supreme Court subsequently denied certification. (*Id.*)

Petitioner proceeding *pro se*, filed the instant Petition for a Writ of Habeas Corpus on October 2, 2024 (Petition, ECF No. 1). He raises three grounds for relief:

> Ground One: The state courts violated R.T.'s Constitutional 14th Amendment and Due Process protection rights when they failed to address Appellant's Brief Points in his briefs.

---

[3] The court had been advised that R.T. waived the September 7, 2022 review hearing pending this appeal and, at his request, no subsequent review hearings have occurred.

> Ground Two: It was unconstitutional to civilly commit R.T. under the SVP – and was a major concern for his appeal.
>
> Ground Three: Whether or not religious belief and practice is a factor of R.T.'s relapse prevention plan, [R.T.] is less likely to offend any offense, criminal or sexual.

ECF No. 1 at 5–8. (Cleaned up.) On December 11, 2024, Petitioner filed a Motion to Appoint Pro Bono Counsel (ECF No. 4), which was subsequently denied. (ECF No. 8.)

Respondents filed a comprehensive Response on June 12, 2025, arguing that the petition is meritless and should be denied. (ECF No. 13.) Respondents contend that the statutory prerequisites for involuntary civil commitment under the SVPA were met, as both State experts examined Petitioner and concluded that he remains at high risk to reoffend with minimal treatment progress. (ECF No. 13, Exs. I, KK, MM.) They further argue that the constitutionality of the SVPA is well-settled; that the statute expressly covers offenses committed outside New Jersey, and Pennsylvania does not seek custody, making transfer inappropriate. (ECF No. 13, Exs. S, U.) Finally, Respondents also assert that Petitioner's allegations regarding religious conversion and expert bias are unsupported and were either unpreserved or rejected on appeal. (ECF No. 13, Exs. B–E, DD, MM.)

On July 16, 2025, Petitioner submitted a brief opposing Respondent's submission. (Opposition Brief, ECF No. 19.) He asserts that the reports and testimony of the State's expert witnesses, particularly Dr. Dudek and Dr. Dorio, were biased, inaccurate, and constituted professional malpractice. (*Id*.) He contends that staff at the Special Treatment Unit ("STU") misrepresented his treatment progress, engaged in racial bias, and denied him adequate sex offender treatment necessary for potential release, thereby violating his substantive due process rights under the Fourteenth Amendment as well as his First and Eighth Amendment rights. (Opposition Brief, ECF No. 19, Exs. A—P.) Petitioner further argues that the civil commitment

process effectively functions as punitive confinement rather than treatment, and he requests that the Court grant his Petition or, alternatively, schedule an evidentiary hearing to examine these claims. (Opposition Brief, ECF No. 19 at 32.)

On July 20, 2025 Respondents filed a response in opposition to Petitioner's motions, arguing that they should be denied as meritless, duplicative, irrelevant or unwarranted. (ECF No. 18.) Petitioner also submitted several letters to the Court over the summer of 2025, the most recent received on August 26, 2025. (ECF No. 22.)[4] The matter is now fully briefed and ripe for adjudication.

## II.     LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011); *Price v. Vincent*, 538 U.S. 634, 641 (2003).  District courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 773 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[4] The Court is in receipt of and has reviewed all filings submitted in this matter. The Court will consider each submission to the extent that it is relevant to the issues addressed herein.

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald,* 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). To the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

### III.   ANALYSIS

Petitioner raises several grounds: bias in treatment reports, constitutional claims under the First, Eighth and Fourteenth Amendments, and alleged inadequacy of his sex-offender treatment toward release. (Petition, ECF No. 1.) The Court notes that Petitioner's opposition brief (Opposition Brief, ECF No. 19) raises additional assertions concerning alleged bias and inadequacy of treatment. Because these contentions were not included in the original habeas petition, the Court considers them only insofar as they elaborate on the constitutional claims already pleaded, and does not treat them as new, independent grounds for relief. *See Mayle v. Felix,* 545 U.S. 644, 655 (2005); *Rainey v. Varner*, 603, F.3d 189, 198 (3d Cir. 2010.) Having carefully reviewed the record, the Court finds none of the grounds warrant relief.

### A. Bias in Treatment Reports

Petitioner contends that the State's expert witnesses (Drs. Dudek and Dorio) were biased, and that the STU treatment staff misrepresented his treatment-progress and engaged in racial bias against him. (Opposition Brief, ECF No. 19 at 25—26.) He asserts that this bias undermines the factual basis for his continued commitment. (*Id.*)

However, the Appellate Division specifically reviewed the hearing conducted by Judge Bury from Sept. 15, 2021 to Jan. 25, 2022, and affirmed his credibility determinations. *See Matter of R.T.*, 2023 WL 8016717. Judge Bury described Dr. Dorio as "credible… with regard to the ultimate conclusion… that [R.T.] is presently highly likely to sexually reoffend… and that he is not highly likely to comply with terms and conditions of a conditional discharge plan now." *Id.* at 2. The judge also found Dr. Dudek credible and accepted his diagnosis of antisocial personality disorder with narcissistic features, other specified paraphilic disorder non-consent, and sexual sadism disorder, and accepted his conclusion that Petitioner is presently highly likely to sexually re-offend. *Id.* (Psychiatrist Report, ECF No. 13-15 at 16—17.) By contrast the judge wholly

discredited Dr. Silikovitz's report as failing to address the core statutory requirement of mental abnormality or personality disorder. *Id.*

Given that state-court adjudication included detailed fact-finding and credibility determinations, the federal habeas court may not second-guess them unless they are objectively unreasonable. *See* § 2254(e)(1). Petitioner does not present clear and convincing evidence that the state court's factual findings were erroneous, nor does he point to any Supreme Court precedent establishing bias in psychological expert testimony as a separate constitutional violation in this context. Thus, this ground fails under § 2254(d).

### B. Fourteenth Amendment: Substantive and Procedural Due Process

Petitioner argues that his substantive due process rights were violated because the civil-commitment process operated in a punitive manner rather than a treatment-oriented one, and that he was denied adequate sex-offender treatment necessary for release. (ECF Nos. 1 at 5, 19 at 29—30.) He also claims procedural due-process violations stemming from the treatment-refusal status and alleged misrepresentation of his treatment progress. (ECF No. 19 at 26—27, 39.)

The Supreme Court has repeatedly held that sex-offender commitment schemes are civil and non-punitive when they serve the legitimate governmental purpose of protecting the public from dangerous individuals with mental abnormalities. *See Kansas v. Hendricks*, 521 U.S. 346, 361–363 (1997). In *Kansas v. Crane*, 534 U.S. 407, 413–414 (2002), the Court clarified that a State must show some inability to control dangerous behavior distinguishing the committed person from an ordinary recidivist. Likewise, in *Seling v. Young*, 531 U.S. 250, 261 (2001), the Court confirmed that as-applied challenges alleging punitive effects do not convert a facially civil scheme into a criminal one. The Third Circuit has likewise upheld the New Jersey SVPA as constitutional. *Aruanno v. Hayman*, 629 F.3d 136, 145–146 (3d Cir. 2010).

The burden therefore rests with Petitioner to demonstrate that the state court's application of this scheme contravened clearly established federal law or unreasonably rejected his constitutional arguments. The record does not support that conclusion. Rather, the Appellate Division affirmed the trial court's finding that the statutory prerequisites of the SVPA were met. *See Matter of R.T.*, 2023 WL 8016717.

The psychiatric evaluations described Petitioner—a 65-year-old man with multiple sexual and nonsexual convictions—as exhibiting entrenched antisocial behavior, narcissistic traits, poor impulse control, and hostility toward women. (Psychiatrist Report, ECF No. 13-15 at 17.) Actuarial assessments placed him in the "above-average" range of risk to reoffend. (*Id.* at 17—19.) The evaluators further concluded that he had demonstrated minimal progress in treatment, denied responsibility for past offenses, and presented no viable conditional-discharge plan. (*Id.*) Those findings fall squarely within the constitutional parameters recognized in *Hendricks* and *Crane*, which permit commitment where an individual suffers from a disorder that predisposes him to commit sexual violence and renders him unable to control such conduct. *Hendricks*, 521 U.S. at 357–359; *Crane*, 534 U.S. at 413.

Furthermore, Petitioner's challenges to the adequacy of treatment and allegations of racial bias lack merit. The record demonstrates Petitioner's prolonged history of treatment refusal, disciplinary infractions, and limited participation in therapeutic programming, all of which impeded his progress. (Psychiatrist Report, ECF No. 13-15 at 17–19.) As the Supreme Court emphasized, "the confinement's potentially indefinite duration is linked, not to any punitive objective, but to the purpose of holding a person until his mental abnormality no longer causes him to be a threat to others." *Hendricks*, 521 U.S. at 347. Judge Bury's order expressly conditioned

advancement to Phase 3A upon meaningful engagement in treatment, underscoring the rehabilitative—not punitive—nature of the confinement. *Matter of R.T.*, 2023 WL 8016717 at *3.

Nor does the record demonstrate any procedural irregularity. Petitioner represented himself with standby counsel, the State presented two expert witnesses who interviewed Petitioner (Drs. Dorio and Dudek), and Petitioner presented his own expert and fact-witness testimony (Dr. Silikovitz and Dr. Connolly). *Id.* at *1—2. The hearing spanned seven non-consecutive days; the judge issued detailed findings of credibility and fact. *Id*. The U.S. Supreme Court's habeas standard requires deference to state court fact-finding unless unreasonable. *See Woods*, 575 U.S. Given Petitioner's extensive participation, the hearing record, and the appellate review, no procedural due process violation is apparent, let alone one that meets the demanding § 2254(d) standard. Therefore, relief here is denied.

### C. First and Eighth Amendment Claims

Petitioner also invokes the First Amendment, asserting that his religious beliefs mitigate his risk of reoffending, and the Eighth Amendment, claiming that his confinement constitutes cruel and unusual punishment. (ECF Nos. 1 at 5—8; 19 at 21—22, 28—29.)

With respect to the First Amendment claim, the record shows that Dr. Silikovitz commented upon Petitioner's religious commitment as related to the likelihood of sexual re-offense, "[Petitioner] underscored the importance of his Muslim beliefs and practices, in maintaining his focus on Muslim precepts, he emphasized that, during his ten years of incarceration and treatment at the STU, he did not ever commit any sexual infractions." (Defense Expert Report, ECF No. 13-26 at 5.) However, the trial court discredited the report of Dr. Silikovitz because it did not address the statutory core requirement of mental abnormality or personality disorder. *See Matter of R.T.*, 2023 WL 8016717 at *2. Judge Bury opined:

> THE COURT: In a similar way that the initial report of Dr. Dudek occurred for the State back in November of 2020, his report was dated November 6, 2020. Dr. Silikovitz, to my surprise, did not make any diagnosis as to mental abnormality and/or personality disorder, and whether or not the existence of same affected either the emotional and/or cognitive and/or volitional realms of Mr. Tinsley. He admitted on cross-examination that he never read the SVPA statute and the requirement with regard to the second prong in particular. And furthermore, he is the first expert in my presiding over these cases Monday through Thursday for two years that failed to give a diagnosis as to a mental abnormality and/or personality disorder in conjunction with the DSM-5.

(ECF No. 13-11 at 23.)

Furthermore, Petitioner does not show that the state court prevented him from exercising religion, nor that his religious beliefs were penalized in violation of the Free Exercise Clause. (*See* ECF Nos. 1; 19.) Accordingly, the claim fails.

The Eighth Amendment argument likewise fails. The Supreme Court has treated SVP commitments as civil, not criminal, thereby avoiding the Eighth Amendment's prohibition on cruel and unusual punishment in this context. *See Hendricks*, 521 U.S. at 361–363; *Seling*, 531 U.S. at 261. Petitioner remains confined because he remains dangerous, and the hearing record shows that release was contemplated pending meaningful engagement in treatment and demonstration of reduced risk:

> If released, he would have serious difficulty controlling his sexually violent behavior to such a degree that he will be highly likely within the reasonably foreseeable future to engage in acts of sexual violence.
>
> The Court also notes that it has considered the possibility as to conditions that might be able to be placed upon the Respondent as a part of the conditional discharge to reduce the Respondent's dangerousness below the level of committability, but there are no such conditions realistically that are presented by the Respondent, nor any suggested by the experts in -- in this case.

> The Respondent at this point in time is at level 2, and the Court is, of course, already ordering that by the next expedited review hearing date, so long as he continues to meaningful -- meaningfully engage in treatment, he shall move to Phase 3A.
>
> I further note for the record that in making my decision, I have applied the balancing test that is set forth in the *W.Z.* case[5] with regard to this concept, quote, "In order to determine if a person is likely to engage in acts of sexual violence, a court must find by clear and convincing evidence that the person has a propensity, inclination, or tendency to commit acts of sexual violence, and must establish by clear and convincing evidence the degree of such propensity. The court must then weight the person's degree of propensity against the nature or the seriousness of the acts he tends to commit in order to determine the extent he poses he threat to others."
>
> In the extant matter, the seriousness of the offenses are high, there are multiple sexual assaults, there are assaultive acts of punching and/or choking, and threats and/or use of weapons. These are not4 minor, fourth degree criminal sexual contact type cases.
>
> Mr. Tinsley offended repeatedly, both as a juvenile and then as an adult, even after having been sanctioned. So, the propensity for him to re-offend is high.
>
> And hopefully, as he continues to progress throughout his treatment, he's going to be able to bring that down to below the standard of highly likely, and become less than highly likely.
>
> But at the moment, there's really no rational basis or means upon which the Court at this juncture could fashion a discharge plan with sufficient conditions in order to ensure the safety of the community and to prevent Mr. Tinsley from re-offending.

(ECF No. 13-11 at 29—30.) (Alterations added.) These findings reflect legitimate civil objectives of treatment and public protection, not punishment. Accordingly, the state courts' rejection of

---

[5] *In re Commitment of W.Z.*, 173 N.J. 109, 801 A.2d 205 (2002) (holding that, under New Jersey's SVPA, the State must prove by clear and convincing evidence that, due to a mental abnormality or personality disorder, the individual has serious difficulty controlling sexually harmful behavior such that it is highly likely he will reoffend; requiring courts to balance the degree of the person's propensity to commit acts of sexual violence against the nature and seriousness of those acts.)

Petitioner's First and Eighth Amendment claims was neither contrary to nor an unreasonable application of clearly established federal law.

## IV.  CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because jurists of reason would not disagree with my conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further.  As such, a certificate of appealability is denied.

## V.  CONCLUSION

For the reasons stated above, the Court finds that the state courts adjudicated Petitioner's commitment hearing on the merits and made detailed fact-finding and credibility rulings that are reasonable. The statute under which Petitioner is confined meets the constitutional framework established by the Supreme Court in *Hendricks* and *Crane*, and the petition fails to establish a violation of clearly established federal law or an unreasonable factual determination or application thereof. Accordingly, Petitioner is not entitled to relief under § 2254.

*/s/ Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**